1  Scott E. Davis
   State Bar No. 016160
2  SCOTT E. DAVIS, P.C.
   20827 North Cave Creek Road, Suite 101
3  Phoenix, AZ  85024

4  Telephone:  (602) 482-4300
   Facsimile:   (602) 569-9720
5  email: davis@scottdavispc.com

6  *Attorney for Plaintiff Neal Muylaert*

7

8                     **UNITED STATES DISTRICT COURT**

9                            **DISTRICT OF ARIZONA**

10 Neal Muylaert,                          | Case No.

11      Plaintiff,

12      v.                                 | **COMPLAINT**

13 The Boeing Company Short Term
   Disability Plan, The Boeing Company
14 Non-Union Long-Term Disability Plan,
   The Boeing Company, Aetna Life
15 Insurance Company,

16      Defendants.

17

18      Now comes the Plaintiff Neal Muylaert (hereinafter referred to as "Plaintiff"), by and

19 through his attorney, Scott E. Davis, and complaining against the Defendants, he states:

20                                  *Jurisdiction*

21      1.    Jurisdiction of the court is based upon the Employee Retirement Income

22 Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f).

23 Those provisions give the district courts jurisdiction to hear civil actions brought to recover

24 employee benefits.  In addition, this action may be brought before this Court pursuant to 28

25

26

1  U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of
2  the United States.

### *Parties*

3

4    2.  Plaintiff is a resident of Maricopa County, Arizona.

5    3.  Upon information and belief, Defendant The Boeing Company, (hereinafter
6  referred to as the "Company") sponsored, subscribed to and administered an Employee
7  Welfare Benefit Plan within the meaning of 29 U.S.C. §3(I) which was self insured,
8  allegedly fully funded and paid for by required contributions.  The Company's purpose in
9  establishing the insurance fund was to provide disability insurance for its employees.  Upon
10 information and belief, the fund is self-insured and may be part of The Boeing Company
11 Short Term Disability Plan and The Boeing Company Long Term Disability Plan
12 (hereinafter referred to as the "STD and/or LTD Plan") which was created to provide the
13 Company's employees with welfare benefits.

14   Upon information and belief, the STD and/or LTD Plans are funded by the
15 Company's general assets and/or from the assets of the STD and/or LTD Plan which is
16 controlled by the Company.  At all times relevant hereto, the STD and/or LTD Plans and
17 the other plans constituted "employee welfare benefit plan(s)" as defined by 29 U.S.C.
18 §1002(1).

19   4.  Upon information and belief, the Company or STD and/or LTD Plans may
20 have delegated responsibility for the STD and/or LTD Plan and/or claim administration of
21 those plans to Aetna Life Insurance Company (hereinafter referred to as "Aetna").  Plaintiff
22 believes that as it relates to his claim, Aetna functioned as the Plan and/or Claim
23 Administrator; however, pursuant to the relevant ERISA regulation, the Company and/or
24 the STD and/or LTD Plans may not have made a proper delegation or properly vested
25 fiduciary authority or power for claim administration in Aetna.

26

5.  Upon information and belief, the Company or the STD and/or LTD Plans operated under a structural conflict of interest in that it operated in dual roles as the claims administrator and payor of benefits; *to wit*, if it approved Plaintiff's claim it was also liable for payment of benefits. [1] The Company or STD and/or LTD Plans' conflict of interest may have also led it to retain a company such as Aetna to be the claims administrator in that the Company or STD and/or LTD Plans created and funded the aforementioned plans and would directly benefit financially if Aetna administered their claims in a parsimonious manner.  Aetna's conflict of interest exists in that if it maintained a parsimonious approach to managing the Company or STD and/or LTD Plans' claims it would benefit directly by fulfilling the terms of its administrative services agreement with the Company or Plans.

6.  The Company, STD and/or LTD Plans and Aetna conduct business within Maricopa County and events giving rise to this Complaint occurred within Maricopa County.

### *Venue*

7.  Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

8.  Incident to his employment, Plaintiff was a covered employee pursuant to the STD and/or LTD Plans and a "participant" as defined by 29 U.S.C. §1002(7).  Plaintiff

---

[1] In *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 868 (9th Cir. 2008) the court held, "In Bruch, the Supreme Court instructed us to "weigh[ ]" a fiduciary's "conflict of interest" as "a 'facto[r] in determining whether there is an abuse of discretion.' " 489 U.S. at 115 (quoting Restatement (Second) of Trusts § 187 cmt. d (1959)). *MetLife labors under such a conflict of interest: It both decides who gets benefits and pays for them, so it has a direct financial incentive to deny claims.* See Langbein, supra, at 1321 ("The danger pervades the ERISA-plan world that a self-interested plan decisionmaker will take advantage of its license under Bruch to line its own pockets by denying meritorious claims.")(emphasis added).

1  seeks Short Term Disability income benefits from the Plan and self-insured fund pursuant to
2  §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits
3  he may be entitled to as a result of being found disabled, including Long Term Disability
4  benefits.

5      9.  After being a loyal employee of the Company since September 28, 1987, on
6  or about October 6, 2009, Plaintiff became disabled due to serious medical conditions and
7  was unable to work in his designated occupation as a Mech Systems Design and Analysis
8  Engineer 5.  Plaintiff has remained disabled as that term is defined in the STD and LTD
9  Plans continuously since that date and has not been able to return to any occupation as a
10 result of his serious medical conditions.

11     10.  Thereafter, due to his serious medical conditions, Plaintiff filed a claim for
12 Short Term Disability benefits.

13     11.  Upon information and belief, the Plan provides the following definition of a
14 covered Short Term Disability:

15-17
> You become disabled as a result of accidental injury, illness, or a pregnancy-related condition and your accidental injury, illness, or pregnancy-related condition prevents you from performing the material duties of your own occupation or other appropriate work the Company makes available.

18     12.  Upon information and belief, the Plan provides the following definition of a
19 covered Long Term Disability:

20-23
> You become disabled as a result of accidental injury, illness, or a pregnancy-related condition and, your accidental injury, illness, or pregnancy prevents you from performing the material duties of *your own* occupation (or other work the Company makes available) during the 26-week elimination period and first 24 months of benefits. After 24 months of benefits, you must be unable to work at *any* reasonable occupation for which you may be fitted by training, education, or experience. (This period may exceed 24 months of benefits if interrupted by temporary or intermittent returns to work.)

24     13.  Upon information and belief, the aforementioned definitions of disability
25 governed Plaintiff's disability claim.
26

-4-

14. In a letter dated October 6, 2009, Aetna notified Plaintiff that it approved his claim for Short Term Disability as of October 13, 2009, as he was deemed unable to perform the material duties of his own occupation due to his medical conditions.

15. In its October 6, 2009 letter Aetna also informed Plaintiff it was only approving his claim for Short Term Disability benefits through November 16, 2009 as it believed he no longer met the definition of disability beyond that date.

16. Plaintiff timely appealed the November 16, 2009 termination of his Short Term Disability claim and submitted additional medical evidence to Aetna which included Attending Physician's Statements completed by his treating providers rendering him unable to work.

17. In a letter dated March 9, 2010 Aetna informed Plaintiff it was upholding its prior denial of his claim.

18. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Aetna's March 9, 2010 denial of his claim for Short Term Disability benefits in a letter dated July 19, 2010. In support of his appeal, Plaintiff submitted additional medical information to Aetna demonstrating he was unable to work in his prior or any other occupation as defined in the relevant STD and/or LTD Plans.

19. In support of his appeal, Plaintiff submitted to Aetna a *Functional Capacity Evaluation* report dated April 23, 2010 which, based on a reasonable degree of medical certainty, the medical professional concluded after examination and testing that Plaintiff "would not be able to perform **sedentary work** consistently on a regular, full – time basis" (original emphasis). Plaintiff also submitted an undated narrative letter from one of his treating physicians which concluded, based on objective medical findings, "it it our expert medical opinion that his condition is permanent and progressive."

20. In further support of his appeal, Plaintiff underwent an *Independent Medical Examination* which was submitted to Aetna on July 19, 2010. After examining Plaintiff, the medical professional concluded, "[Plaintiff] appears to be incapable of any sustained gainful employment." Plaintiff also submitted a July 12, 2010 Vocational Evaluation report, wherein an expert, after interviewing Plaintiff and reviewing relevant records, concluded he "has been unable to engage in any competitive work since October 6, 2009."

21. In addition, on October 6, 2010 Plaintiff informed Aetna his claim for Social Security Disability benefits had been approved prior to an Administrative Law Judge hearing. The Social Security Administration found Plaintiff "entitled to monthly disability benefits beginning April 2010." In his October 6, 2010 letter Plaintiff informed Aetna the Social Security Administration approved his claim based on the same evidence as was submitted to it on July 19, 2010 and requested it apply significant weight to the recent approval of his claim. Plaintiff submitted therein a complete copy of his September 11, 2010 Notice of Award from the Social Security Administration.

22. The SSA's decision in Plaintiff's claim is relevant evidence this Court must now consider because SSA's definition of disability is more stringent than the STD and/or LTD Plan's own definition of disability.

23. As part of its review of Plaintiff's claim for Short Term Disability benefits, Aetna retained Richard Kaplan, M.D. to conduct a medical records only review.

24. Upon information and belief, Plaintiff believes Dr. Kaplan may have an incentive to protect his own consulting relationship(s) with the disability insurance industry and/or Aetna by providing medical review reports which selectively review and ignore evidence as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies such as Aetna and which supported the denial of Plaintiff's claim. Given the complexity of Plaintiff's disabling medical condition(s),

1  Plaintiff believes Dr. Kaplan's review of his claim presents a conflict of interest in that it did not have Dr. Kaplan personally examine him and is a reason his claim was denied and he did not receive a full and fair review pursuant to ERISA, 29 U.S.C. § 2560.503-1.

25. Notwithstanding the SSA's approval and the evidence submitted on appeal, Aetna notified Plaintiff in a letter dated September 21, 2010, which was mailed to the incorrect address for Plaintiff's counsel and not received in that office until October 20, 2010, that it was upholding its decision to deny his claim for continued Short Term Disability benefits after reiterating its erroneous position that no medical evidence supported Plaintiff's disability.

26. In its September 21, 2010 denial letter, Aetna denied Plaintiff of a full and fair review for a plethora of reasons including but not limited to: terminating his benefits when there was no evidence his medical condition had improved to an extent he could return to any work; ignoring the fact that it had previously concluded that he was unable to work in his prior occupation based on the same medical conditions and less evidence of disability; failing to consider the side effects his various medications had on his ability to work; ignoring the *combined* effects of Plaintiff's serious medical conditions on his ability to work; ignoring or de-emphasizing Plaintiff's self reported limitations; ignoring or de-emphasizing consistent and repeated reliable medical reports by Plaintiff's treating physician that he could not function sufficiently in any occupation; ignoring SSA's determination Plaintiff was unable to engage in any gainful occupation; ignoring or de-emphasizing the vocational report from an expert who determined Plaintiff was totally disabled from engaging in any occupation; consistently accepting self-serving evidence obtained by Aetna which suggested Plaintiff was not disabled while simultaneously ignoring and rejecting reliable evidence which proved he was unable to work in any occupation and was entitled to benefits; retaining a biased medical professional to review

Plaintiff's claim and who Plaintiff believes has an extensive relationship with the disability review industry and Aetna, failing to consider evidence submitted by Plaintiff on appeal and failing to obtain a vocational evaluation when Plaintiff's own vocational evaluation proved he was unable to work in any occupation.

27.     In evaluating Plaintiff's claim on appeal, Aetna had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in his best interests and other participants" and it violated ERISA by failing to do so. [2]

28.     Plaintiff believes the reason the STD and/or LTD Plan and Aetna provided an unlawful review which was neither full or fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the STD and/or LTD Plan's dual roles as decision maker and payor of benefits which created an inherent conflict of interest and this conflict is the reason his disability was denied.

29.     Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Aetna, Dr. Kaplan, and any individual who reviewed his claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted Aetna's decision to deny his claim.

30.     Aetna has informed Plaintiff that he has exhausted his administrative remedies.

---

[2] "It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

31. The evidence which supports a finding that Plaintiff met the definition of disability in the STD claim is also sufficient to meet the LTD Plan's definition of disability; therefore, Plaintiff believes he is eligible not only for the remaining STD benefits that are available pursuant to that plan, but is also entitled to LTD benefits. Plaintiff further alleges he is entitled to LTD benefits even though at the time of the filing of this Complaint a decision on those benefits may not be ripe. Plaintiff alleges he is entitled to LTD benefits pursuant to the Plan given the fact the evidence submitted to the Defendants supports a finding that he meets both the STD and LTD Plans' definition of disability as does the approval by SSA finding that he is unable to engage in any occupation. In addition, Defendants' own finding that he was unable to engage in his occupation for The Boeing Company and was entitled to STD benefits is relevant evidence that he is entitled to benefits pursuant to the STD plan as well as the LTD plan and its "own" and "any reasonable occupational" definitions of disability.

32. With regard to whether Plaintiff meets any definition of disability set forth in the STD and/or LTD Plan, the Court should review the evidence in Plaintiff's claim *de novo* because the aforementioned ERISA violations, including ignoring the SSA decision are flagrant, outrageous and violate any discretion which may have been afforded in the STD and/or LTD Plan.

33. As a direct result of the STD Plan and Aetna's decision to deny Plaintiff's disability claim he has been injured and suffered damages in the form of lost disability benefits, as well as Long Term Disability benefits in addition to other potential employee benefits he may have been entitled to receive through or from the STD and/or LTD Plan, the Company or any other Plan the company may have created such as the Retirement and Health Insurance Plans as a result of being found disabled.

1    34.    Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees, and costs from Defendants.

35.    Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate him for losses he incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.    For any and all disability benefits due to Plaintiff as a result of being found disabled pursuant to the STD and/or LTD Plan from the date he was first denied these benefits through the date of judgment and prejudgment interest thereon as well as any other employee benefits, such as including but not limited to retirement and/or health insurance benefits he is entitled to from the STD and/or LTD Plan, the Company or any other plan created or maintained by the Company as a result of being found disabled;

B.    For an Order that Plaintiff meets the Short Term Disability Plan's definition of disability.

C.    For an Order that Plaintiff meets the Long Term Disability Plan's definitions of disability for "own occupation" and "any reasonable occupation" benefits.

D.    For an order directing Defendants to pay Plaintiff benefits until such time as he meets the STD and/or LTD Plan or policy conditions for termination of benefits;

E.    For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

F.    For such other and further relief as the Court deems just and proper.

DATED this 15th day of December, 2010.

SCOTT E. DAVIS. P.C.

By:   */s/ Scott E. Davis, Esq.*
         Scott E. Davis, Esq.
         Attorney for Plaintiff